

DLA Piper LLP (US)
1201 North Market Street
Suite 2100
Wilmington, Delaware 19801-1147
www.dlapiper.com

Brian Biggs
Brian.Biggs@dlapiper.com
T  302.468.5661
F  302.778.7813

March 16, 2021
VIA CM/ECF

The Honorable Christopher J. Burke
J. Caleb Boggs Federal Building
844 N. King Street, Unit 28, Room 2325
Wilmington, DE 19801-3555

**Re:** *Speyside Medical, LLC v. Medtronic CoreValve, LLC et al.,* **Case No. 1:20-cv-00361-LPS**

Dear Magistrate Judge Burke:

Defendants Medtronic CoreValve, LLC et al. ("Medtronic") respectfully submit this supplemental letter brief per the Court's March 12 Oral Order granting leave to file it.  D.I. 91.

Speyside's acknowledgment that its litigation funding agreement "giv[es] the funder a security interest in the patents to secure performance of that agreement" (D.I. 89) establishes the foothold of relevance that the Court originally found lacking (D.I. 88).  This new information materially alters a key premise of the Court's March 2, 2021 ruling—*i.e.*, that Medtronic has "no facts or evidence to suggest that the agreement does or might have" "a clause that grants the third-party funder(s) some type of actual or conditional ownership/license to the patents-in-suit in some scenario."  D.I. 88.  This Court and Medtronic now know that the very assets Speyside asserts against Medtronic have been encumbered in a way that could impair Speyside's ability to sue on those assets at all.  This new information is more than enough for the required "baseline showing of relevance."  D.I. 88 (citing cases).  An order compelling production of the agreement and documents relating to its formation and performance is needed for Medtronic to discover whether a standing defect exists now or at any other time during the pendency of this case.

This new fact further distinguishes this case from *United Access*, where the Court found that the defendant's relevance arguments (which did not include standing) were based on mere speculation.  *United Access Techs., LLC v. AT&T Corp.*, C.A. No. 11-338-LPS, 2020 WL 3128269, at *2 (D. Del. June 12, 2020).  Here, by contrast, the existence of a third party's security interest in the asserted patents supplies a non-speculative basis for relevance—*i.e.*, whether that security interest has resulted or might later result in a loss of Speyside's standing to assert the patents.  This new fact also distinguishes this case from the portion of *Ashghari-Kamrani* where the court rejected the defendant's "wholly speculative" argument that "if a third party has a financial interest in this case, the third party may also have knowledge regarding the patents at issue." *Ashghari-Kamrani v. United Servs. Auto. Ass'n*, C.A. No. 2:15-cv-478, 2016 WL 11642670, at *4 (E.D. Va. May 31, 2016) (cited in D.I. 88).  This case is instead more like



The Honorable Christopher J. Burke
March 16, 2021
Page Two

the portion of *Ashghari-Kamrani* where the court permitted discovery based on "substantial facts . . . indicating that information about the relationship between Plaintiffs and [a third party] may be relevant to Defendant's defense of standing." *Id.* at *6. While the precise mechanics of the security interest are unknown to Medtronic without access to Speyside's agreement, the now-known facts are enough to establish the relevance of the agreement and related documents under Rule 26. Medtronic should be allowed to discover what events can trigger what loss of rights in the asserted patents so it can evaluate whether Speyside has standing at all stages of this case.

Speyside's high-level representations that its funder's security interest differs from the security interest in *Uniloc* is a merits-based argument that cannot defeat relevance for discovery purposes. D.I. 89; *Uniloc USA, Inc. v. Motorola Mobility, LLC*, C.A. No. 17-1658-CFC, 2020 WL 7771219 (D. Del. Dec. 30, 2020). Speyside argues that its funder's "secured interest has not been exercised, and it is not automatically triggered by any event (as in the *Uniloc* case)." D.I. 89. But *Uniloc* is only one example of how a security interest may lead to the destruction of a patentee's standing. Medtronic should be allowed to develop its own legal positions by applying the "anything but straightforward" doctrine of "constitutional standing in patent cases" to the evidence itself. *Uniloc*, 2020 WL 7771219, at *3. Speyside's legal arguments are no substitute.

Any blanket claim of work product protection is especially untenable given the known facts. The work product doctrine does not shield from discovery facts that are relevant to the litigation. *United States v. Dentsply Int'l, Inc.*, 187 F.R.D. 152, 155-56 (D. Del. 1999). Here, the agreement and documents evincing its formation and performance are relevant operative facts—not just facts contained within a document. *See also Acceleration Bay LLC v. Activision Blizzard, Inc.*, C.A. No. 16-453-RGA, 2018 WL 798731, at *1-2 (D. Del. Feb. 9, 2018) (rejecting argument that work product doctrine shielded pre-agreement communications with third-party litigation funder). And even if work product protection were found, Medtronic has a "substantial need" for the documents under Rule 26(b)(3) because they are uniquely instrumental to evaluating the crucial question of standing. If Speyside still claims work product protection for certain portions of the documents, then it must give Medtronic enough information to test those claims. Any proportionality objection fails too. As *Uniloc* shows, standing is fundamental and sometimes case-dispositive. Speyside has not shown an undue burden or cost of production.

Respectfully submitted,

/s/ *Brian A. Biggs*
Brian A. Biggs (DE Bar No. 5591)

*Counsel for Medtronic CoreValve, LLC and Medtronic, Inc.*

CC: Counsel of Record via CM/ECF and Email

EAST\179992835.1