

August 31, 2021
*VIA CM/ECF*

**DLA Piper LLP (US)**
1201 North Market Street
Suite 2100
Wilmington, Delaware 19801-1147
www.dlapiper.com

Brian Biggs
Brian.Biggs@dlapiper.com
T  302.468.5661
F  302.778.7813

The Honorable Christopher J. Burke
J. Caleb Boggs Federal Building
844 N. King Street, Unit 28, Room 2325
Wilmington, DE 19801-3555

REDACTED VERSION OF D.I. 135
FILED: SEPTEMBER 7, 2021

Re:   *Speyside Medical, LLC v. Medtronic CoreValve, LLC et al*,
       Case No. 1:20-cv-00361-LPS

Dear Magistrate Judge Burke:

Since Defendants Medtronic CoreValve, LLC and Medtronic, Inc. (collectively, "Medtronic") filed their initial Motion to Stay Pending *Inter Partes* Review (D.I. 85), the grounds for a stay have only gotten stronger. A stay may dispose of three of the five asserted patents and simplify the remaining two when IPR final written decisions issue less than one year from now. This case is at an efficient stopping point, before the parties take a single deposition and before the Court has to construe ten terms over five patents, including seven terms from three patents in instituted IPRs. And Speyside will not be prejudiced. Accordingly, pursuant to the Court's August 24, 2021 Order (D.I. 132), Medtronic respectfully renews its request to stay this case in its entirety until final disposition of the IPRs and any subsequent appeals. D.I. 86, 96.

**I.  The Instituted IPRs and Stage of Litigation**. Speyside asserts five patents comprising three families. In the first family, asserted U.S. Patent No. 8,377,118 ("'118 patent") is the parent, and U.S. Patent Nos. 9,510,941 ("'941 patent") and 10,449,040 ("'040 patent") (collectively, "'118 patent family") are continuations that share the same specification and similar claims. The remaining two patents, U.S. Patent Nos. 9,445,897 and 9,603,708, have distinct specifications and are unrelated to each other and the '118 patent family.

On August 16 and 18, 2021, the PTAB instituted Medtronic's IPRs challenging all asserted claims of the '118, '897, and '708 patents.[1] D.I. 130. The Board found "Petitioner's grounds to be strong" in all three petitions, *id.* at Ex. A at 20, Ex. B at 16, Ex. C at 13, and found that Medtronic's petitions demonstrated a reasonable likelihood that Medtronic would prevail in its assertions that ***every single challenged claim is unpatentable*** based on several unique grounds. *Id.* at Ex. A at 38-40, Ex. B at 26-29, Ex. C at 35 and 41. The final written decisions on all three petitions are due August 2022, and trial in the district court is set for October 11, 2022. D.I. 35.

While the PTAB decided the petitions, Speyside's prediction that the parties would only engage in "focused work" on claim construction and document production came true. D.I. 93 at 12. Since the Court denied Medtronic's motion without prejudice, Medtronic served one set of interrogatories (D.I. 117); the parties engaged in some email discovery (D.I. 118); and claim construction briefing concluded. But the parties have not filed any additional motions, and the

---

[1] The PTAB instituted trial on claims 1, 2, 5, 7-11, 13, 14, 18-23 of the '118 patent; claims 1-4, 6-10, 16, 17 of the '897 patent; and claims 21 and 22, of the '708 patent.

The Honorable Christopher J. Burke
August 31, 2021
Page Two

Court has not held any more hearings. Not a single deposition has been taken; the Markman hearing is scheduled for October 12; fact discovery does not close until November 23; expert discovery has not begun; and trial is scheduled for October 11, 2022. D.I. 35. As the Court noted in its order on the original motion to stay, "there is still much to do in this case." D.I. 108.

**II. Legal Standard**. The three-factor balancing test courts consider when determining whether to grant a motion to stay favors staying this case. *See Princeton Digit. Image Corp. v. Konami Digit. Ent. Inc.*, No. 12-1461-LPS-CJB, 2014 WL 3819458, at *2 (D. Del. Jan. 15, 2014). Courts consider (1) the stage of the proceedings; (2) whether a stay would simplify the issues and the trial of the case; and (3) whether a stay would unduly prejudice the nonmovant. *Id.*; *see also British Telecomms. PLC v. IAC/InterActiveCorp*, No. 18-366-WCB, 2019 WL 4740156, at *2 (D. Del. Sept. 27, 2019). All three factors strongly favor a stay. D.I. 86 at 11-12.

**III. Speyside Will Not Be Prejudiced by a Stay.** First, Speyside now admits it "has not commercialized any product or process that embodies or practices one or more claims of the Patents-in-Suit," Ex. A (Speyside Resp. Interrog. 17), is not seeking lost profits, *Id.* (Speyside Resp. Interrog. 19), and does "not participate in the relevant market and will not suffer any loss of market share or erosion of goodwill due to a stay." *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18-452-WCB, 2019 WL 3943058, at *6 (D. Del. Aug. 21, 2019); *Bonutti Skeletal Innovations, L.L.C. v. Zimmer Holdings, Inc.*, No 12-cv-1107 (GMS), 2014 WL 1369721, at *4 (D. Del. Apr. 7, 2014) ("The relationship between the parties is no impediment to a stay, however, where the plaintiff is a non-practicing entity.").

Second, a stay would conserve party and judicial resources. Medtronic timely filed its IPRs two months before the one-year time bar, promptly moved to stay (D.I. 86 at 12), and promptly renewed its motion more than two weeks before the September 8 deadline to do so (D.I. 131). *Neste Oil OYJ v. Dynamic Fuels, LLC*, No. 12-1744-GMS, 2013 WL 3353984, at *2 (D. Del. July 2, 2013) ("Given the prompt filing of both the petition for *inter partes* review and the motion to stay, the court cannot discern an improper dilatory motive."). Pausing the case before depositions and the claim construction hearing will streamline the case and optimize efficiency for the parties and the Court.

Third, the IPRs will conclude by August 16 and 18 2022, two months before trial (October 11, 2022) and about six weeks after the dispositive motion hearing (June 28, 2022), thus the stage of the litigation favors a stay. Allowing the case to continue could (1) lead to redundant or inconsistent claim constructions and rulings on dispositive motions, and (2) moot significant (if not all) of the time-consuming work to be done by the Court and the parties over the next 12 months. Judicial economy requires a stay at this stage.

**IV. A Stay Will Significantly Simplify the Issues.** A stay will significantly simplify the issues for the Court to decide at claim construction, in dispositive and *Daubert* motions, and beyond. The PTAB found Medtronic asserts **strong** invalidity grounds in the IPRs, and that **all asserted claims** in three of the five asserted patents (accounting for more than half of all asserted claims) are reasonably likely to be found invalid. *See also* Ex. B, PTAB Trial Statistics for FY21 Q3, at

The Honorable Christopher J. Burke
August 31, 2021
Page Three

12 (showing 147 of 253 (58%) final written decisions found all claims unpatentable and 53 (21%) found at least some claims unpatentable). The final written decisions may eliminate or bring into clearer focus liability issues in all three asserted patent families. Moreover, potential damages will be significantly truncated, as will the amount of fact and expert discovery and motions before the Court. Speyside only asserts indirect infringement of the '941 and '040 patents (unlike the '708, for which direct is also asserted), and the earliest-to-issue ('118) and last-to-expire ('897) patents are in instituted IPRs. Even if some claims survive, the guidance from the PTAB and statutory estoppel will simplify issues remaining in the district court litigation. *See Ethicon LLC v. Intuitive Surgical, Inc.*, No. 17-871-LPS, 2019 WL 1276029, at *2 (D. Del. Mar. 20, 2019) ("[T]here will be estoppel of defenses that could otherwise be litigated in this court. There will be additional prosecution history relating to all of the claims in this case. Some claims may be cancelled. There may be amendments.").

Courts have granted stays in similar situations where many, but not all, asserted claims and patents were in instituted IPRs. *E.g., IOENGINE*, 2019 WL 3943058, at *8 (granting stay where one of three patents and only five of 20 claims in instituted IPRs) and *9 (collecting cases where stays granted with "fewer than all the claims asserted in the related litigation"); *Bonutti*, 2014 WL 1369721, at *1 (stay granted when only four of six patents challenged in IPR petitions with two petitions instituted at time stay was granted). Here, that the '941 and '040 patents are not in instituted IPRs has little impact on the stay analysis since they are continuations of, and very similar to, the '118 patent. *IOENGINE*, 2019 WL 3943058, at *9 (where IPR instituted on one patent in family, finding likely simplification of issues related to asserted patents in same family that share specification and claim terms). The '941 and '040 patents share a common specification with the '118 patent, and the claims are very similar. D.I. 131 at Appendix A. Indeed, the examiner rejected the original claims of the '941 patent for nonstatutory double patenting because they were "not patentably distinct" from claims in the '118 patent, Ex. C at SPEYSIDE0006167-SPEYSIDE0006168, and the applicant filed terminal disclaimers in response, Ex. D. Instituted claim 1 of the '118 patent shares many similar limitations with asserted claims 17 and 26 of the '941 patent and asserted claim 7 of the '040 patent. Ex. E (demonstrating similar limitations between all asserted independent claims in the '118 patent family). And at least some of the prior art asserted in the instituted '118 IPR is asserted in this case against the '941 and '040 patents. Ex. F (excerpted invalidity contentions). Thus, if claim 1 of the instituted '118 patent is found to be unpatentable, the PTAB's final written decision will simplify the disputes on all asserted claims in the '941 and '040 patents.

Finally, given the Court has not held a Markman yet, the PTAB's claim constructions will be instructive and potentially dispositive of the claim construction disputes heard by the Court. *See Canatelo LLC v. Axis Commc'ns, AB*, No. 13-1227-GMS, 2014 WL 12774920, at *1, n.3 (D. Del. May 14, 2014). Of the ten claim terms addressed in the parties' joint claim construction brief, D.I. 119, seven are from the instituted patents, and the remaining terms are likely to benefit from guidance in the final written decision of the '118 patent.

**V. The Current Stage of the Case Favors a Stay**. The case remains in a relatively early stage with much work still to do. Since Medtronic's original motion to stay was decided, the parties

The Honorable Christopher J. Burke
August 31, 2021
Page Four

have engaged in what Speyside described as "focused work": Medtronic has served one set of interrogatories; the parties have performed some additional document production; and the parties completed claim construction briefing.  But significant work waits on the horizon.  While no party has taken a deposition to date, both parties have served deposition notices on each other and third parties that will be conducted in the coming months before the close of fact discovery on November 23, 2021.  *See* D.I. 35.  The Court is holding a Markman hearing on October 12 in which the parties have requested construction of ten terms over five patents, including four terms that Medtronic contends are indefinite.  Expert discovery is slated to begin at the end of this year, and dispositive motions will be briefed in early 2022.  The parties have not sought judicial intervention on any disputes since the Court denied Medtronic's original motion to stay.[2]  Staying the case now would not create a sudden disruption in fact or expert discovery.  Rather, staying the case now would be an efficient stopping point in the litigation.  *See Ethicon*, 2019 WL 1276029, at *2  (granting stay because it was 'an efficient pausing point' after claim construction order was issued, fact discovery was completed, and expert discovery was nearly over).

Not only will a stay conserve judicial resources on claims the PTAB has already decided are reasonably likely to be unpatentable, but it also will insulate the parties and Court from redundant or potentially inconsistent decisions.  The final written decisions are due in August 2022, by which point the Court (should a stay not be granted) will likely have issued an order on claim construction and will have spent considerable effort on (if not resolved) the parties' dispositive and *Daubert* motions.  *See IOENGINE*, 2019 WL 3943058, at *5 (granting motion to stay despite stage of the case because, in part, "the bulk of the expenses that the parties would incur in pretrial work and trial preparation are still in the future").

For these reasons, this district has granted stays at far later stages than here.  *Ethicon*, 2019 WL 1276029, at *2 ("[T]he Court has already issued its claim construction order, fact discovery is complete, and expert discovery is nearly concluded. . . . [but] the case is at 'an efficient pausing point,' so this factor should not weigh heavily against a stay."); *IOENGINE*, 2019 WL 3943058, at *5 ("the bulk of the expenses that the parties would incur in pretrial work and trial preparation are . . . in the future"); *Huvepharma EOOD et al v. Associated British Foods, plc et al.*, No. 18-cv-00129-RGA, 2019 WL 3802472, at *1 (D. Del. Aug. 13, 2019) (granting a stay pending IPR ten months prior to trial date, after claim construction and document production was fully complete).

**VI.  Conclusion**.  Because all three factors strongly favor a stay, Medtronic respectfully requests that the Court stay all deadlines until final disposition of the IPRs and any subsequent appeals.

---

[2] Medtronic will be filing a motion to amend to add an affirmative defense.  Should the Court grant the stay, Medtronic's motion to amend can likewise be stayed.

The Honorable Christopher J. Burke
August 31, 2021
Page Five

Respectfully submitted,

/s/ Brian A. Biggs
Brian A. Biggs (DE Bar No. 5591)

*Counsel for Medtronic CoreValve, LLC and Medtronic, Inc*
cc: All Counsel of Record (via CM/ECF)