Kelly E. Farnan
(302) 651-7705
farnan@rlf.com

May 8, 2023

**BY CM/ECF**   PUBLIC VERSION

The Honorable Christopher J. Burke
United States District Court for the District of Delaware
844 King Street
Wilmington, DE 19801

Re:  *Speyside Medical, LLC v. Medtronic Corevalve, LLC, et al.,*  C.A. No. 20-361-GBW-CJB

Dear Judge Burke:

Pursuant to D.I. 232, Defendants write in advance of the May 22, 2023 discovery conference to request that (1) Speyside's two sole owners be compelled to answer the simple question of their share in any proceeds of the litigation, which is not privileged and is highly relevant to their bias and credibility; (2) Speyside be ordered to produce, without redactions, arms-length negotiations between its CEO and a third party, because they are not privileged.

**Speyside Must Allow Testimony Relating to Witness Bias**

Plaintiff Speyside Medical, LLC ("Speyside") has two members, Jeffrey Cohen and Gordon Bishop.  Speyside refused to allow Mr. Cohen to provide testimony regarding his financial stake in this case, and has declined to confirm it will allow Mr. Bishop to answer similar questions.  This testimony is highly relevant to bias. *Wheeler v. United States*, 351 F.2d 946, 947 (1st Cir. 1965) (finding it is "clear that inquiry into the possible financial stake of a witness in a particular outcome of a case in which the witness is testifying is a proper subject for cross-examination").  Speyside's attempt to withhold discovery on this topic is improper, and its witnesses should be compelled to answer this basic, factual question.



As a preliminary matter, the terms of the litigation funding agreement are not privileged, so Speyside's position fails at the outset.[1]  Several courts have found that under similar

---

[1] This Court previously held that portions of the litigation funding agreement were not relevant, but the question of privilege was not decided at that time.

Page 2

circumstaces, a negotiated funding agreement is not subject to attorney-client, work product, or common interest privilege. *See 10x Genomics Inc. v. Celsee, Inc.*, 505 F. Supp. 3d 334, 338 (D. Del. 2020); *Acceleration Bay LLC v. Activision Blizzard, Inc.*, 2018 WL 798731, at *2 (D. Del. Feb. 9, 2018); *Leader Techs., Inc. v. Facebook, Inc.*, 719 F. Supp. 2d 373, 376-77 (D. Del. 2010).

But even assuming Speyside has a plausible claim to shield the terms of the funding arrangement, Mr. Cohen and Mr. Bishop's shares in the litigation are certainly not privileged and are highly relevant. *See Wheeler,* 351 F.2d at 947; *Crowe v. Bolduc*, 334 F.3d 124, 132 (1st Cir. 2003) (holding it was error to not allow cross-examination into the financial stake of witnesses, as "classic evidence of bias"); *CardioVention, Inc. v. Medtronic, Inc.*, 483 F. Supp. 2d 830, 835 (D. Minn. 2007) ("The fact that CardioVention's three main shareholders have a direct financial interest in the outcome of the case is relevant to their credibility as trial witnesses."). This information does not necessarily reveal *anything* about the substantive terms of the funding arrangement, and even if it did, at most it would implicate the collective remaining interest (presumably shared by other investors, funders, or counsel), which Speyside cannot reasonably contend is privileged information.

Speyside's attempt to use the supposed irrelevance and/or privilege of the funding agreement to insulate its two principal witnesses from legitimate credibility attacks should be rejected. If its fact witnesses stand to receive a share in any award in this case, that information is not privileged and is highly relevant to their bias and credibility.

**Statements Made to Third Parties Must be Produced Without Redactions**

Speyside has improperly redacted several emails between Mr. Cohen, Speyside's CEO, and employees of PDL Biopharma, all from a time when Mr. Cohen was negotiating his purchase of the patents-in-suit from PDL Biopharma. Because the parties were part of an arms-length transaction, their communications cannot be privileged, and Speyside should be ordered to produce these materials unredacted. *See, e.g.*, *10x Genomics*, 505 F. Supp. 3d at 337-38 (refusing to extend common-interest privilege to negotiations between counterparties in similar circumstances).

Speyside produced emails with PDL Biopharma redacted for (supposed) privilege. *See, e.g.*, Exs. 2-7.[2]

---

[2] [redacted]



At this time, PDL Biopharma owned the patents-in-suit as well as all other assets of Direct Flow Medical.

These redactions are improper. Speyside has no plausible common interest theory that allows it to maintain privilege protection over communications to PDL Biopharma while the parties negotiated an arms-length transaction. In *10x Genomics*, for example, the court held communications during the negotiation process were not subject to privilege *even if* the parties discussed legal matters in the course of negotiating an acquisition of patents and right to enforce the patents. *10x Genomics*, 505 F. Supp. 3d. at 339-40. In so holding, the court explained that applying the privilege to negotiations between counterparties did not advance the purposes behind the common interest privilege. *Id.* at 340; *see also Corning Inc. v. SRU Biosystems, LLC*, 223 F.R.D. 189, 190-91 (D. Del. 2004) (finding no common interest over documents containing opinions of counsel, where those documents were disclosed during negotiations to persuade a corporation to invest). The same logic applies here: ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Disclosure of any purportedly privileged information to PDL was not made to further *common* legal interests, but rather to further Speyside's business interest in acquiring the assets and to facilitate a business transaction. *See* Ex. 1 (Cohen Dep.) at 177-78.

Because it is apparent from Mr. Cohen's sworn testimony and from the documents themselves that any exchange between PDL and Speyside in early 2019 was part of a formal, arms-length negotiation and not subject to any viable common interest privilege, Medtronic requests all such documents be produced in unredacted form. This includes at least Exs. 2-7.[3]

---

[3] Speyside recently produced over *one thousand* additional emails from Mr. Cohen, and has not yet supplemented its privilege log, so these examples are non-exhaustive.

        Respectfully,

        /s/ *Kelly E. Farnan*

        Kelly E. Farnan (#4395)

cc:    All Counsel of Record (via CM/ECF)

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2023, true and correct copies of the foregoing document were caused to be served on the following counsel of record as indicated:

**BY ELECTRONIC MAIL**
Jack B. Blumenfeld
Brian P. Egan
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
Wilmington, DE 19801

**BY ELECTRONIC MAIL**
Steven C. Cherny
Anne-Raphaëlle Aubry
Quinn Emanuel Urquhart & Sullivan, LLP
111 Huntington Avenue Suite 520
Boston, MA 02199

**BY ELECTRONIC MAIL**
James E. Baker
Brian P. Biddinger
Jared Kneitel
Matthew Robson
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue
New York, NY 10010

*/s/ Kelly E. Farnan*
Kelly E. Farnan (#4395)
farnan@rlf.com