IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SPEYSIDE MEDICAL, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MEDTRONIC COREVALVE, LLC and ) <br> MEDTRONIC, INC., ) <br> ) <br> Defendants. ) | C.A. No. 20-361 (GBW) (CJB) |

**LETTER TO MAGISTRATE JUDGE BURKE IN OPPOSITION TO MEDTRONIC'S
LETTER MOVING TO COMPEL ADDITIONAL EMAIL PRODUCTIONS**

OF COUNSEL:
Steven C. Cherny
Anne-Raphaëlle Aubry
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
111 Huntington Avenue Suite 520
Boston, MA  02199
(617) 712-7100

Edward J. DeFranco
James E. Baker
Brian P. Biddinger
Jared Kneitel
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Avenue
New York, NY  10010
(212) 849-7000

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Brian P. Egan (#6227)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
began@morrisnichols.com

*Attorneys for Plaintiff*

June 8, 2023

Dear Judge Burke:

Speyside opposes Medtronic's motion to compel Speyside to run additional email search terms. That motion is simply an attempt by Medtronic's new counsel to expand the scope of discovery by revisiting the parties' agreement two years ago on the scope of email search terms. Fact discovery is closed, and Medtronic has not articulated good cause for its request that Speyside be compelled to run additional email searches using sixteen additional terms, far in excess of the number permitted by the Default Standard.

**There is no reason to revisit the parties' 2021 agreement.** In June 2021, Speyside disclosed proposed email search terms to Medtronic pursuant to the Default Standard. D.I. 282 Ex. 1 at 4. Medtronic thereafter identified eight additional terms, which Speyside agreed to use for its email searches. *Id.* at 2. Speyside then ran the complete set of agreed terms on its custodians' email and completed its email production. Medtronic did not raise any issues with Speyside's email production until April 2023.[1]

On April 18, 2023, Medtronic brought to Speyside's attention an email produced by a third party that Medtronic contended should have been produced through the application of the parties' agreed search terms to the email of one of Speyside's custodians, Jeffrey Cohen. Speyside promptly investigated the issue and discovered that Speyside's document vendor had run the agreed upon search terms in July 2021 over an incomplete set of data. On April 21, just three days after the issue was raised by Medtronic, Speyside notified Medtronic of the error and informed Medtronic that Speyside was re-running the search terms and would produce any additional responsive non-privileged emails. Medtronic responded on April 24 asking Speyside to run sixteen additional search terms. Medtronic did not provide any justification for its request except to state that it was requesting additional search terms because "Speyside [was] re-running search terms for [its] custodians." D.I. 282 Ex. 7 at 1-2 (April 24, 2023 email from C. Woodin).

Fact discovery is closed, and Medtronic has not articulated good cause for its request that Speyside be compelled to run sixteen additional search terms on top of the nearly 30 agreed terms that Speyside already used.[2] Medtronic's claims that Speyside "did not honor" the parties' agreement, and that "Speyside did not run any terms across their collected data," are simply wrong. Speyside complied with the Default Standard by disclosing its proposed search terms to Medtronic, agreeing to run Medtronic's additional terms, and producing the email based on those terms. The fact that Speyside's document vendor made an error when running the terms, which was promptly corrected by Speyside once discovered, does not mean that Speyside did not honor the agreement, nor does it justify Medtronic's attempt to inject new search terms. Indeed, none of Medtronic's new search terms are tied to Speyside's supplemental email production, nor could

---

[1]  When Medtronic's new counsel first raised questions about Mr. Cohen's email production, they were apparently not aware that the parties had previously exchanged and agreed upon search terms. Speyside's counsel subsequently provided them with the correspondence reflecting the parties' agreement. D.I. 282 Ex. 4 at 4 (April 10, 2023 email from A. Aubry).

[2]  Medtronic also makes no attempt in its motion to show how the newly identified terms correlate to any of Medtronic's document requests.

they be.  At the time Medtronic requested these new search terms, it had not yet received the supplemental email production that Speyside made on May 1, 2023.  Medtronic is simply trying to use a vendor error, that was fixed immediately after being discovered, to discard the parties' agreement on the scope of email discovery.

The cases Medtronic cites are inapposite.  Medtronic relies on *Eurand, Inc. v. Mylan Pharms., Inc.*, 266 F.R.D. 79, 85 (D. Del. 2010), for the proposition that an adequate search is one that could have been expected to produce the information requested.  But in *Eurand,* the Court made clear "[i]n evaluating whether search terms or search methods employed to carry out the search were appropriate, the court applies a 'reasonableness test to determine the 'adequacy' of search methodology.'"  Here, there is no question that the search methodology was adequate, as Medtronic itself agreed with it in 2021.

Medtronic cites *Feenix* as purportedly requiring the producing party to disclose hit reports and sample data, and to meet and confer if it sought to modify search terms.  But there is no indication there that *Feenix* and *Steel* had already agreed on search terms and completed the corresponding productions, or that *Steel* was asking for wholly new search terms, as Medtronic is seeking here.  Speyside did not object to or seek to modify the search terms that Medtronic requested in July 2021.  Accordingly, there was no need to disclose hit reports and sample data, or to meet and confer.  *Feenix* certainly does not support Medtronic's position that it is entitled to disregard its prior agreement on email search terms and request sixteen additional terms in the final month of fact discovery, without even attempting to show good cause.

**There is no prejudice to Medtronic.**  Medtronic claims prejudice because it was allegedly prevented from "conducting meaningful discovery" due to Speyside's May 1, 2023 supplemental production.  But there can be no prejudice related to Medtronic's new search terms because these terms are wholly new and unrelated to Speyside's May 1 production.  In any event, to the extent that there was any prejudice from Speyside's supplemental production, Speyside already cured it by agreeing to provide Mr. Cohen for an additional deposition.  Thus, Medtronic had an opportunity to question Mr. Cohen about the emails in the supplemental production.[3]

Medtronic cites *Chervon* – but there, the defendant delayed remedying its productions for nearly a year, and only after being forced to do so by the Court.  *See Chervon (HK) Limited v. One World Technologies, Inc.*, C.A. No. 19-1293-LPS, Oral Order (D. Del. Aug. 17, 2021).  Here, unlike in *Chervon*, Speyside promptly investigated its email productions and remedied them within a few weeks, pursuant to the parties agreed-upon terms.  And here, unlike in *Chervon,* Medtronic waited two years to seek to expand the agreed upon search terms.

Because Medtronic has not shown good cause, or demonstrated any prejudice, Speyside respectfully requests that Medtronic's motion to compel be denied.

---

[3]  Medtronic's claims of prejudice are also belied by the fact that Medtronic disclosed **ten** additional fact witnesses and produced nearly 20,000 pages of documents (of which fewer than 100 documents were specific to the Evolut FX) in the final two months of fact discovery, without offering any explanation for why they had not been provided years earlier.

The Honorable Christopher J. Burke Page 3
June 8, 2023

                Respectfully,

                */s/ Brian P. Egan*

                Brian P. Egan

BPE/bac

cc: All Counsel of Record (via electronic mail)